1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT

8

FOR THE EASTERN DISTRICT OF CALIFORNIA

9
10

11

12

13

14

15

16

17

**VALENTINE ALFREDO GUTIERREZ,**

Petitioner,

**v.**

**JEFFREY BEARD,**

Respondent.

**Case No. 1:13-cv-01407 LJO MJS (HC)**

**FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS**

18
19
20
21

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.   Respondent is represented by Catherine Chatman of the office of the Attorney General.

22

**I.      PROCEDURAL BACKGROUND**

23
24
25
26
27
28

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Madera, following his conviction by jury trial on November 10, 2010, for lewd and lascivious acts upon a child under the age of 14. (Clerk's Tr. at 239.)   Petitioner was sentenced to a determinate sentence of sixteen (16) years in state prison.   (Id.)

1   Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate

2   District. The court affirmed the judgment on July 11, 2012.  (Lodged Docs. 13-16.) On

3   September 19, 2012, the California Supreme Court denied review.  (Lodged Docs. 17-

4   18.)

5   Petitioner filed a petition for writ of habeas corpus with the California Supreme

6   Court on June 3, 2013. (Lodged Doc. 19.) The court denied the petition on July 24,

7   2013. (Lodged Doc. 20.)

8   Petitioner filed the instant federal habeas petition on September 3, 2013.  (Pet.,

9   ECF No. 1.) He presents three claims for relief in the instant petition: (1) trial counsel

10  was ineffective for failing to call both lay and expert witnesses to impeach the victim, and

11  that counsel failed to properly investigate the victim's past sexual activities; (2) his due

12  process rights were violated by the admission of allegations by the victim that he

13  engaged in uncorroborated and uncharged criminal acts; and (3) the prosecution

14  engaged in misconduct by taking inculpatory statements by Petitioner through coercion.

15  (Id.)

16  Respondent filed an answer on January 21, 2014, and Petitioner filed a traverse

17  on April 18, 2014. (ECF Nos. 21, 25.) The matter stands ready for adjudication.

18  **II.    STATEMENT OF THE FACTS[1]**

19  PROCEDURAL BACKGROUND

20  On August 25, 2010, an information was filed in the Superior Court
    of Madera County charging appellant with rape (Pen. Code, § 261, subd.
21  (a)(2); count 1), lewd and lascivious act upon a child under the age of 14
    (Pen. Code, § 288, subd. (a); count 2), and forcible lewd and lascivious
22  act upon a child under the age of 14 (Pen. Code, § 288, subd. (b)(1);
    count 3). As to all three counts, the information alleged that appellant had
23  suffered a prior "strike" conviction/juvenile adjudication (Pen. Code, §§
    667, subd. (b)-(i)).
24
    On October 25, 2010, the trial court granted, over defense
25  objection, the prosecution's motion to introduce evidence of appellant's
    prior sex offenses against Jane Doe pursuant to Evidence Code section
26

27  [1]The Fifth District Court of Appeal's summary of the facts in its July 11, 2012 opinion is presumed correct.
    28 U.S.C. § 2254(e)(1).

28

1108.

On October 26, 2010, appellant's jury trial began. On November 10, 2010, the jury found appellant guilty of count 2. The jury was unable to reach a verdict on counts 1 and 3, and a mistrial was declared as to those counts, which were later dismissed at the prosecution's request. Appellant waived a jury trial on the prior strike allegation, and the trial court found the allegation to be true.

On March 7, 2011, the trial court imposed the upper term of eight years for count 2, doubling it to 16 years pursuant to Penal Code, section 667, subdivision (e)(1).

FACTS

In February 2010, Jane Doe lived with her sister in Lemoore but would stay with her mother in Firebaugh on the weekends. Maxine, Jane Doe's 15-year-old cousin, would stay with her mother (Jane Doe's aunt) in Firebaugh every other weekend. Jane Doe and Maxine would spend time together when they were both in Firebaugh. Appellant was one of Maxine's brothers and was 22 years old in February 2010.

On the Saturday before Valentine's Day, Jane Doe spent the night with Maxine at Maxine's mother's one-bedroom apartment in Firebaugh. Appellant was also there that night, along with Maxine's little brother and Jane Doe's little sister. Jane Doe and Maxine fell asleep late that night while watching television in the bedroom.

In the early morning hours, appellant came into the bedroom and told Maxine to wake up and go to the living room to sleep. Maxine went to the couch in the living room and appellant turned on the television in the living room and turned up the volume. Appellant then went back into the bedroom and closed the door. Maxine heard the bathroom fan come on. She then heard the bed in the bedroom start squeaking and hitting against the nightstand. The squeaking lasted five to 10 minutes.

After appellant left Maxine in the living room, he got under the covers and lay down on the bed next to Jane Doe. Appellant put Jane Doe's hand on his penis and asked her to move it. When Jane Doe did not respond, appellant moved her hand up and down on his penis for a few minutes.

Appellant got on top of Jane Doe and held her wrists down with his hands. Appellant tried to open Jane Doe's crossed legs. Jane Doe testified that, "we were arguing because he wanted me to open my legs and I didn't want to." After a couple of minutes, Jane Doe stopped resisting because appellant was stronger than she was. Appellant pulled down Jane Doe's sweats and underwear, put his penis into her vagina, and moved back and forth on top of her.

Afterwards, appellant walked into the restroom. Jane Doe opened the door to the living room and Maxine came back into the bedroom. At that time, Jane Doe did not tell Maxine what happened because Jane Doe was scared and did not want to upset her family. However, Jane Doe told Maxine what happened later the next day and Maxine reported it to Maxine's mother.

In the subsequent police investigation, Jane Doe made several pretext calls to appellant with the assistance of Detective Zachary Zamudio of the Madera County Sheriff's Department. Among other things, appellant said that Jane Doe had "wanted it" after Jane Doe told appellant that he had raped and hurt her, and taken away her virginity. Appellant also apologized and expressed regret for what happened, and said "I promise that nothing like will ever happen again nothing like that." Appellant told Jane Doe, "[j]ust act like it didn't happen, you know."

Appellant stated a few times that he and Jane Doe were both drunk and she was "the one that started it" and told her not to "play innocent." He also suggested that Jane Doe took her own bottoms off. Jane Doe disputed appellant's characterization of their encounter, stating, at one point: "I didn't do anything and if you were drunk that's no reason." To this, appellant replied: "It's not you're right. I was stupid, I'm fucking pathetic." Appellant also asked Jane Doe if she wanted him to buy something for her.

Appellant adamantly denied statements by Jane Doe that he touched her when she was younger. Among other things, he told her: "Calm down. I never done that shit to you when you were smaller. What the fuck are you talking about?"

Detective Zamudio and other law enforcement agents went to appellant's apartment to arrest appellant. During the drive to the sheriff's department, appellant consented to being interviewed and acted shocked when told he was arrested for rape. Detective Zamudio testified that appellant "cussed me out saying I was sick and how could I say that he had raped his 12-year-old cousin." When Detective Zamudio finally told appellant he knew about the pretext calls and that they were recorded, appellant became very upset. He started swearing, calling Jane Doe different names, and hitting his head on the dash of the detective's truck.

Detective Zamudio conducted a further interview of appellant at the sheriff's department. Appellant admitted he had a sexual encounter with Jane Doe on the night in question but claimed she was the instigator, stating: "She was drinking and she's the one that did everything. Me I'm a fool because I'm older I should have known better but and I was already intoxicated ...." According to appellant, he sent his sister to the living room and was going to send Jane Doe there too because he wanted to sleep in the bedroom. However, after his sister went to the living room, Jane Doe grabbed his penis and started playing with it. Appellant also claimed that Jane Doe also "took off her bottoms."

Appellant denied having sexual intercourse several times during the interview. However, when confronted with allegations that he pinned Jane Doe down and forced her to have sex, appellant stated: "No nothing like that. She, she did it she enticed me ... she got me already aroused and everything when I was already aroused she, she grabbed everything and stuff like that and put it in inside her." When they were having sex, Jane Doe never screamed or told appellant to stop.

4

Appellant's Prior Sex Offenses Against Jane Doe

Jane Doe testified that appellant sexually molested her when she was five to eight years old. At the time, she was living in Firebaugh with her mother, siblings, and appellant. Jane Doe testified: "Every night [appellant] would put his hand under my bottom clothing and touch my vagina or not, [and] ... he would put his hand on top o[f] my hand on his penis and he would move it." Jane Doe clarified that appellant would touch her "every night" she did not sleep with her sister.

Sometimes appellant would get on top of Jane Doe and "hump" her by rubbing his body against hers. This happened several times and in different locations. Once it happened in Jane Doe's brother's room, and when her brother walked in, appellant jumped off her.

Jane Doe never told anyone about the molestation except a friend who was around Jane Doe's age. Jane Doe explained she did not tell anyone else because, "I was scared that the police would get involved and just take me away from my mom because my mom had [appellant] living there."

The Defense

Maxine testified about her conversation with Jane Doe the day after the incident. Jane Doe told Maxine that appellant "stuck it in her and he covered her mouth." While appellant was covering Jane Doe's mouth, he said, 'Shut up. You know you like it." Jane Doe never mentioned to Maxine that appellant held down her wrists or took her hand and touched his penis with it.

Appellant testified he only "vaguely" remembered the incident because he "drank a lot that night." Earlier in the night he drank "a good size portion of tequila and at the end ... started drinking Bud Ice."

When asked whether he knew what Jane Doe was talking about in the pretext calls, appellant testified: "She told me something happened the day afterwards she said something happened, but, you know, honestly, I didn't know what to think of it, you know, but I know I was, I was embarrassed and I was shameful. I didn't want to talk about it."

Appellant denied that he raped Jane Doe. When asked if something happened that night, he testified: "I don't know. I honestly don't know."

People v. Gutierrez, 2012 Cal. App. Unpub. LEXIS 5144, 1-9 (July 11, 2012).

## III.   **DISCUSSION**

### A.   **Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he

5

1  suffered violations of his rights as guaranteed by the U.S. Constitution.  (Pet.)  In

2  addition, the conviction challenged arises out of the Madera County Superior Court,

3  which is located within the jurisdiction of this court.  28 U.S.C. § 2241(d); 2254(a).

4  Accordingly, this Court has jurisdiction over the instant action.

5          **B.**    <u>**Legal Standard of Review**</u>

6        On April 24, 1996, Congress enacted the Antiterrorism and Effective Death

7  Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus

8  filed after its enactment.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 326 (1997); <u>Jeffries v. Wood</u>,

9  114 F.3d 1484, 1499 (9th Cir. 1997).  The instant petition was filed after the enactment

10  of the AEDPA and is therefore governed by AEDPA provisions.

11        Under AEDPA, a person in custody under a judgment of a state court may only be

12  granted a writ of habeas corpus for violations of the Constitution or laws of the United

13  States.  28 U.S.C. § 2254(a); <u>Williams</u>, 529 U.S. at 375 n. 7.  Federal habeas corpus

14  relief is available for any claim decided on the merits in state court proceedings if the

15  state court's adjudication of the claim:

16
17      (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

18
19      (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

20  28 U.S.C. § 2254(d).

21              1.    <u>Contrary to or an Unreasonable Application of Federal Law</u>

22        A state court decision is "contrary to" federal law if it "applies a rule that

23  contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts

24  that [are] materially indistinguishable from [a Supreme Court case] but reaches a

25  different result."  <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005) (citing <u>Williams</u>, 529 U.S. at

26  405-06).  "AEDPA does not require state and federal courts to wait for some nearly

27  identical factual pattern before a legal rule must be applied . . . The statute recognizes . .

28  . that even a general standard may be applied in an unreasonable manner."  <u>Panetti v.</u>

1  Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).  The

2  "clearly established Federal law" requirement "does not demand more than a 'principle'

3  or 'general standard.'"  Musladin v. Lamarque, 555 F.3d 830, 839 (2009).  For a state

4  decision to be an unreasonable application of clearly established federal law under §

5  2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle

6  (or principles) to the issue before the state court.  Lockyer v. Andrade, 538 U.S. 63, 70-

7  71 (2003).  A state court decision will involve an "unreasonable application of" federal

8  law only if it is "objectively unreasonable."  Id. at 75-76 (quoting Williams, 529 U.S. at

9  409-10); Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002).  In Harrington v. Richter, the

10  Court further stresses that "an *unreasonable* application of federal law is different from

11  an *incorrect* application of federal law."  131 S. Ct. 770, 785 (2011) (citing Williams, 529

12  U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks

13  merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

14  correctness of the state court's decision."  Id. at 786 (citing Yarborough v. Alvarado, 541

15  U.S. 653, 664 (2004)).  Further, "[t]he more general the rule, the more leeway courts

16  have in reading outcomes in case-by-case determinations."  Id.; Renico v. Lett, 130 S.

17  Ct. 1855, 1864 (2010).  "It is not an unreasonable application of clearly established

18  Federal law for a state court to decline to apply a specific legal rule that has not been

19  squarely established by this Court."  Knowles v. Mirzayance, 129 S. Ct. 1411, 1419

20  (2009) (quoted by Richter, 131 S. Ct. at 786).

21              2.       Review of State Decisions

22          "Where there has been one reasoned state judgment rejecting a federal claim,

23  later unexplained orders upholding that judgment or rejecting the claim rest on the same

24  grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the

25  "look through" presumption.  Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198

26  (9th Cir. 2006).   Determining whether a state court's decision resulted from an

27  unreasonable legal or factual conclusion, "does not require that there be an opinion from

28  the state court explaining the state court's reasoning."  Richter, 131 S. Ct. at 784-85.

1  "Where a state court's decision is unaccompanied by an explanation, the habeas

2  petitioner's burden still must be met by showing there was no reasonable basis for the

3  state court to deny relief." Id. "This Court now holds and reconfirms that § 2254(d) does

4  not require a state court to give reasons before its decision can be deemed to have been

5  'adjudicated on the merits.'" Id.

6  Richter instructs that whether the state court decision is reasoned and explained,

7  or merely a summary denial, the approach to evaluating unreasonableness under §

8  2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments

9  or theories supported or, as here, could have supported, the state court's decision; then

10  it must ask whether it is possible fairminded jurists could disagree that those arguments

11  or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786.

12  Thus, "even a strong case for relief does not mean the state court's contrary conclusion

13  was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75). AEDPA "preserves

14  authority to issue the writ in cases where there is *no possibility* fairminded jurists could

15  disagree that the state court's decision conflicts with this Court's precedents." Id.

16  (emphasis added). To put it yet another way:

17
   As a condition for obtaining habeas corpus relief from a federal
18  court, a state prisoner must show that the state court's ruling on the claim
   being presented in federal court was so lacking in justification that there
   was an error well understood and comprehended in existing law beyond
19  any possibility for fairminded disagreement.

20  Id. at 786-87. The Court then explains the rationale for this rule, i.e., "that state courts

21  are the principal forum for asserting constitutional challenges to state convictions." Id. at

22  787. It follows from this consideration that § 2254(d) "complements the exhaustion

23  requirement and the doctrine of procedural bar to ensure that state proceedings are the

24  central process, not just a preliminary step for later federal habeas proceedings." Id.

25  (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977)).

26           3.     Prejudicial Impact of Constitutional Error

27  The prejudicial impact of any constitutional error is assessed by asking whether

28  the error had "a substantial and injurious effect or influence in determining the jury's

8

1   verdict." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993); <u>see also</u> <u>Fry v. Pliler</u>, 551

2   U.S. 112, 121-22 (2007) (holding that the <u>Brecht</u> standard applies whether or not the

3   state court recognized the error and reviewed it for harmlessness).  Some constitutional

4   errors, however, do not require that the petitioner demonstrate prejudice.  <u>See</u> <u>Arizona v.</u>

5   <u>Fulminante</u>, 499 U.S. 279, 310 (1991); <u>United States v. Cronic</u>, 466 U.S. 648, 659

6   (1984).

7   **IV.    REVIEW OF PETITION**

8           **A.    Claim One: Ineffective Assistance of Counsel**

9           Petitioner, in his first claim, asserts that counsel was ineffective for: (1) failing to

10  call defense witnesses Rudy Cardenas and Elvia Ortiz to impeach the victim's testimony;

11  (2) failing to call an expert witness on false child sexual abuse allegations to rebut the

12  prosecution's theories; and (3) for failing to investigate the victim's sexual history. (Pet. at

13  4.)

14                  1.    <u>State Court Decision</u>

15          Petitioner presented his claim by way of a petition of writ of habeas corpus filed

16  with the California Supreme Court. (Lodged Doc. 19 at 3.)  The court denied the petition

17  without comment. (Lodged Doc. 20.) The state court decision did not address the merits

18  of the claim. Therefore, this Court, under § 2254(d), must determine what arguments or

19  theories could have supported the state court's decision and determine whether it is

20  possible fairminded jurists could disagree that those arguments or theories are

21  inconsistent with Supreme Court law. <u>Richter</u>, 131 S. Ct. at 786.

22                  2.    <u>Law Applicable to Ineffective Assistance of Counsel Claims</u>

23          The law governing ineffective assistance of counsel claims is clearly established

24  for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).

25  <u>Canales v. Roe</u>, 151 F.3d 1226, 1229 (9th Cir. 1998). In a petition for writ of habeas

26  corpus alleging ineffective assistance of counsel, the Court must consider two factors.

27  <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); <u>Lowry</u>

28  <u>v. Lewis</u>, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's

1  performance was deficient, requiring a showing that counsel made errors so serious that

2  he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.

3  Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell

4  below an objective standard of reasonableness, and must identify counsel's alleged acts

5  or omissions that were not the result of reasonable professional judgment considering

6  the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348

7  (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court

8  indulges a strong presumption that counsel's conduct falls within the wide range of

9  reasonable professional assistance. Strickland, 466 U.S. at 687; see also, Harrington v.

10  Richter, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

11       Second, the petitioner must demonstrate that "there is a reasonable probability

12  that, but for counsel's unprofessional errors, the result ... would have been different,"

13  Strickland, 466 U.S. at 694. Petitioner must show that counsel's errors were so

14  egregious as to deprive defendant of a fair trial, one whose result is reliable. Id. at 687.

15  The Court must evaluate whether the entire trial was fundamentally unfair or unreliable

16  because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1348; United

17  States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994).

18       A court need not determine whether counsel's performance was deficient before

19  examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

20  Strickland, 466 U.S. at 697. Since the defendant must affirmatively prove prejudice, any

21  deficiency that does not result in prejudice must necessarily fail. However, there are

22  certain instances which are legally presumed to result in prejudice, e.g., where there has

23  been an actual or constructive denial of the assistance of counsel or where the State has

24  interfered with counsel's assistance. Id. at 692; United States v. Cronic, 466 U.S., at 659,

25  and n.25 (1984).

26       As the Supreme Court reaffirmed recently in Harrington v. Richter, meeting the

27  standard for ineffective assistance of counsel in federal habeas is extremely difficult:

28       The pivotal question is whether the state court's application of the

10

1
2
3
4
5
6

Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." Williams, supra, at 410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

7
8
9
10
11
12

A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251, 261 (2009) (internal quotation marks omitted).

13   Harrington v. Richter, 131 S. Ct. at 785-86.

14   "It bears repeating that even a strong case for relief does not mean the state

15   court's contrary conclusion was unreasonable." Id. at 786. "As amended by AEDPA, §

16   2254(d) stops short of imposing a complete bar on federal court relitigation of claims

17   already rejected in state proceedings." Id. "As a condition for obtaining habeas corpus

18   from a federal court, a state prisoner must show that the state court's ruling on the claim

19   being presented in federal court was so lacking in justification that there was an error

20   well understood and comprehended in existing law beyond any possibility for fairminded

21   disagreement." Id. at 786-87.

22   Here, Petitioner claims ineffective assistance of appellate counsel. The Due

23   Process Clause of the Fourteenth Amendment guarantees a criminal defendant the

24   effective assistance of counsel on his first appeal as of right. Evitts v. Lucey, 469 U.S.

25   387, 391-405, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985). Claims of ineffective assistance

26   of appellate counsel are reviewed according to the standard set out in Strickland v.

27   Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Smith v. Robbins,

28   528 U.S. 259, 285, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000); Moormann v. Ryan, 628

1    F.3d 1102, 1106 (9th Cir. 2010). The petitioner must show that counsel's performance

2    was objectively unreasonable, which in the appellate context requires the petitioner to

3    demonstrate that counsel acted unreasonably in failing to discover and brief a merit-

4    worthy issue. Smith, 528 U.S. at 285; Moormann, 628 F.3d at 1106. The petitioner also

5    must show prejudice, which in this context requires the petitioner to demonstrate a

6    reasonable probability that, but for appellate counsel's failure to raise the issue, the

7    petitioner would have prevailed in his appeal. Smith, 528 U.S. at 285-86; Moormann,

8    628 F.3d at 1106.

9         Accordingly, even if Petitioner presents a strong case of ineffective assistance of

10   counsel, this Court may only grant relief if no fairminded jurist could agree on the

11   correctness of the state court decision.

12             3.   Analysis

13        Respondent contends that Petitioner failed to state the three grounds for

14   ineffective assistance of counsel with sufficient specificity to be entitled to relief. The

15   Court agrees that the assertions made by Petitioner lack foundational details. However,

16   rather than determine whether the claims should be denied as conclusory, in the interest

17   of judicial economy, the Court shall determine whether the claims are entitled to relief on

18   the merits.

19             i.   Failure to Call Lay Witnesses

20        Petitioner claims that counsel failed to call defense witnesses "Rudy Cardenas

21   and Elvia Ortiz whose testimony would tend to impeach statements made by the victim."

22   (Pet. at 5.) As Respondent notes, Petitioner does not explain who the witnesses are or

23   what testimony they could provide to impeach the victim. Petitioner has the burden to

24   show that counsel fell below an objective standard of reasonableness in not presenting

25   the witnesses, and that the failure to present the witnesses would lead to a reasonable

26   probability of a different result. Strickland, 466 U.S. at 694. Petitioner has not met his

27   burden with regard to either prong.

28        Respondent notes that during the pretrial hearing, there was some discussion

1    regarding witness Cardenas being called to testify regarding the witness' interactions

2    with the victim through the victim's social media webpage, specifically relating to

3    comments the victim made regarding drug use and gang involvement. (Rep. Tr. at 84-

4    87.) The second witness, Ortiz, was Petitioner's mother, and from the record there is no

5    indication regarding what testimony she could have provided to impeach the victim's

6    testimony or credibility.

7           Petitioner has failed to show that counsel fell below the broad range of

8    professional competence by not presenting the witnesses. It appears that there could

9    have been legitimate reasons why counsel would strategically decide not to call

10   Cardenas as a witness. There was a strong probability that the testimony that defense

11   counsel was attempting to elicit would have not been admitted as overly prejudicial

12   under California Code of Evidence § 352. The testimony was not related to the victim's

13   testimony of the sexual assault, but instead was an attempt to attack the character of the

14   victim by portraying her as involved in gang activity and drug use. Further, as the victim

15   was a twelve year old girl, it was clearly within the discretion of counsel to determine

16   whether attacking the victim's credibility with such a witness would have backfired and

17   alienated the jury. The second witness, Ortiz, was the Petitioner's mother. Petitioner has

18   not explained what testimony Ortiz could provide to attempt to impeach the victim. Based

19   on the lack of evidence regarding her testimony, Petitioner has not overcome the second

20   prong of Strickland and shown that there was a reasonable probability that the result of

21   the trial would have been different had he presented Ortiz's testimony. Also, the court

22   notes that it was likely reasonable trial strategy to not present Ortiz. As she was

23   Petitioner's mother, even if she could offer impeachment testimony against the victim,

24   Ortiz would suffer from credibility concerns as the jury could find that she was providing

25   testimony in an attempt to keep her son from being convicted.

26          As such, fairminded jurists could agree on the correctness of the state court

27   decision that Petitioner was not prejudiced by the failure of counsel to present the lay

28   witnesses. Petitioner has not shown that there was a reasonable probability of a different

1  verdict had the witnesses been presented. Moreover, defense counsel's decision not to

2  present the witnesses and attempt to attack the character of the twelve year old sexual

3  assault victim could easily be seen as a tactical decision which a reasonably competent

4  attorney could make. Petitioner is not entitled to relief with regard to this claim.

5                              ii.      Failure to Call Expert Witness

6         Next, Petitioner asserts that counsel was ineffective for failing to call an expert

7  witness on false sexual abuse accusations. (Pet. at 4.) Petitioner again presents no

8  factual support for his claim. From the record, the Court does not observe any

9  indications that the victim was making false accusations. The victim reported the incident

10 the next day, and further, during the subsequent investigation, Petitioner made

11 incriminating statements in conversations with the victim and law enforcement. Even if

12 an expert witness could have called into question the credibility of the statements of the

13 victim, Petitioner has not shown that there was a reasonable probability that the jury

14 would have found him not guilty of the charges in light of his own incriminating

15 statements.

16        Fairminded jurists could agree on the correctness of the state court decision that

17 Petitioner was not prejudiced by the failure of counsel to present an expert witness to

18 attack the credibility of the child sexual assault victim. Petitioner has not shown that

19 there was a reasonable probability of a different verdict had the witness been presented.

20 Moreover, defense counsel's decision not to present the expert witness could easily be

21 seen as a tactical decision which a reasonably competent attorney could make.

22 Petitioner is not entitled to relief with regard to this claim.

23                             iii.     Failure to Investigate Victim's Sexual History

24        Finally, Petitioner asserts that counsel was ineffective for failing to investigate the

25 victim's sexual history, including "activity as a 'social prostitute' – on-line solicitation for

26 gifts rather than cash." (Pet. at 4.) "Although trial counsel is typically afforded leeway in

27 making tactical decisions regarding trial strategy, counsel cannot be said to have made a

28 tactical decision without first procuring the information necessary to make such a

1    decision." <u>Reynoso v. Giurbino</u>, 462 F.3d 1099, 1112 (9th Cir. 2006); <u>Cannedy v.</u>
2    <u>Adams</u>, 706 F.3d 1148, 1162 (9th Cir. 2013).

3        Although a failure to perform an adequate investigation can be a basis for
4    deficient performance under <u>Strickland</u>, Petitioner has not shown that he is entitled to
5    relief with regard to this claim. Under California law, "a defendant generally cannot
6    question a sexual assault victim about his or her prior sexual activity." <u>People v.</u>
7    <u>Bautista</u>, 163 Cal. App. 4th 762, 781 (2008). California has enacted a strict procedure
8    under Evidence Code Section 782 that includes a hearing outside of the presence of the
9    jury prior to the admission of evidence of the complaining witness's sexual conduct. <u>Id.</u>
10   Due to the onerous requirements to allow such testimony to be admitted, and based on
11   the fact that the testimony would not undermine Petitioner's own incriminating
12   statements, it was reasonable for defense counsel to not pursue investigation into the
13   victim's sexual history.

14       Finally, in his traverse, Petitioner asserts that the cumulative effect of counsel's
15   errors was prejudicial and rose to the level of ineffective assistance of counsel. Petitioner
16   did not raise a claim of cumulative error in his state petition, and therefore the claim is
17   not exhausted. Regardless, the Court finds that Petitioner has not shown that the
18   cumulative effect of the alleged errors would have resulted in a different decision.[1] In
19   light of the victim's actions of reporting the incident the next day, and Petitioner's
20   incriminating statements, the court finds that there is not a reasonable probability that the
21   result of the trial would have been different had counsel taken the actions that Petitioner
22   complains of herein at trial. Accordingly, Petitioner's claim of ineffective assistance of
23   counsel based on cumulative error is without merit.

24       Petitioner has not shown that he was prejudiced by the failure of counsel to
25   investigate the sexual history of victim. Petitioner has not shown that there was a

26   _____
27   [1] Despite Petitioner's failure to exhaust his state remedies, the Court may review the claims on the
     merits to determine if they must be denied. <u>See</u> 28 U.S.C. § 2254(b)(2) ("An application for writ of habeas
     corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies
28   available in the courts of the State.").

1   reasonable probability of a different verdict had he performed the investigation or that

2   the decision not to investigate was not a reasonable tactical decision which a competent

3   attorney could make. Nor has Petitioner shown that the cumulative effect of counsel's

4   investigation and tactical decisions at trial were unreasonable or would have resulted in

5   a different verdict. Petitioner has failed to satisfy the "unreasonable application" prong of

6   § 2254(d)(1) by showing that there was no reasonable basis for the state courts' denial

7   of that claim. Pinholster, 131 S. Ct. at 1402. Petitioner is not entitled to habeas relief with

8   regard to claim one.

9   **B.    Claim Two: Introduction of Prejudicial Evidence**

10   Petitioner next claim contends that the trial court violated his due process rights

11   by admitting unduly prejudicial evidence. During trial the prosecutor moved to introduce

12   evidence relating to prior sexual acts committed by Petitioner against the victim.

13   Petitioner contends that the presentation of the evidence violated his due process rights

14   because the evidence was more prejudicial than probative, and that the law prohibits the

15   admission of propensity evidence in general.

16   2.    State Court Decision

17   The claim was denied in a reasoned decision by the Court of Appeal (Answer, Ex.

18   A.) and in a subsequent appeal to the California Supreme Court (Lodged Docs. 17-18.)

19   "[W]here there has been one reasoned state judgment rejecting a federal claim, later

20   unexplained orders upholding that judgment or rejecting the claim rest on the same

21   grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). This is referred to as the

22   "look through" presumption. Id. at 804. Since the Court of Appeal was the last court to

23   issue a reasoned opinion on this issue, this Court "looks through" the California Supreme

24   Court decision to the reasoned analysis of the Court of Appeal. In the last reasoned

25   decision denying Petitioner's claim, the appellate court explained:

26   I. Evidence Code section 1108

27   Appellant contends the trial court committed reversible error by
     admitting evidence of prior uncharged sex offenses against Jane Doe.
28   (Evid. Code, § 1108.) We disagree.

Evidence that a person has a propensity or disposition to commit criminal acts is generally inadmissible, and is excluded because of its highly prejudicial nature. (Evid. Code, § 1101; People v. Karis (1988) 46 Cal.3d 612, 636 (Karis).) The admissibility of character evidence was previously limited to establish some fact other than a person's character or disposition, such as motive, intent, identity, or common scheme and plan. (Evid. Code, § 1101, subd. (b); Karis, supra, at p. 636; People v. Soto (1998) 64 Cal.App.4th 966, 983.)

Evidence Code section 1108 provides an exception to Evidence Code section 1101 and permits the jury in sex offense cases to consider evidence of prior charged or uncharged sex offenses for any relevant purpose. (People v. Falsetta (1999) 21 Cal.4th 903, 911-912 (Falsetta); People v. James (2000) 81 Cal.App.4th 1343, 1353, fn. 7.) Evidence Code section 1108, subdivision (a) states: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense ... is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."

Evidence Code section 1108 therefore permits the trier of fact to consider a defendant's prior uncharged sex offenses as propensity evidence. (Falsetta, supra, 21 Cal.4th at p. 911; People v. Pierce (2002) 104 Cal.App.4th 893, 897.) That is because our Legislature has determined that in sexual offense cases, the policy considerations favoring the exclusion of evidence of other sexual offenses are outweighed by the policy considerations favoring its admission, and that "the need for this evidence is 'critical' given the serious and secretive nature of sex crimes and the often resulting credibility contest at trial." (People v. Fitch (1997) 55 Cal.App.4th 172, 181-182.)

Admission of evidence under Evidence Code section 1108 remains subject to a section 352 analysis, which permits "[t]he trial court in its discretion, may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) "The prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence." (Karis, supra, 46 Cal.3d at p. 638; People v. Yu (1983) 143 Cal.App.3d 358, 377.) "Rather, the statute uses the word in its etymological sense of 'prejudging' a person or cause on the basis of extraneous factors. [Citation.]" (People v. Farmer (1989) 47 Cal.3d 888, 912, overruled on other grounds in People v. Waidla (2000) 22 Cal.4th 690, 724, fn. 6.)

Appellant contends:

"As a matter of law, the trial court abused its discretion by allowing the prosecutor to present the extremely inflammatory, prejudicial uncharged sex evidence. Under [Evidence Code] section 352, the evidence should have been excluded.... Admission of the evidence violated the 'common-law tradition' of excluding propensity evidence ..., and thus resulted in the denial of appellant's right to due process, a fair trial, and fundamental fairness under the Fifth,

Sixth, and Fourteenth Amendments...."

In <u>Falsetta</u>, supra, 21 Cal.4th at p. 911, the California Supreme Court held Evidence Code section 1108 is constitutional on its face. This court is bound by that ruling. (<u>Auto Equity Sales, Inc. v. Superior Court</u> (1962) 57 Cal.2d 450, 455.) The California Supreme Court recently declined a defendant's invitation to (a) reconsider its decision in <u>Falsetta</u> and (b) hold that admission of evidence under Evidence Code section 1108 to establish a defendant's propensity to commit a sexual offense violates his or her due process rights. The Supreme Court noted that Evidence Code section 352 is an adequate safeguard against the admission of unduly prejudicial evidence. The Supreme Court further affirmed that the routine application of state evidentiary law does not implicate a criminal defendant's constitutional rights. (<u>People v. Lewis</u> (2009) 46 Cal.4th 1255, 1285-1299.) Accordingly, we reject appellant's constitutional challenge to Evidence Code section 1108 on the ground it violates the common law tradition of excluding propensity evidence.

We next turn to appellant's claim that the evidence of his prior sex offenses against Jane Doe should have been excluded under Evidence Code section 352. In making an Evidence Code section 352 determination of whether the probative value of evidence of an uncharged offense is substantially outweighed by the probability of undue prejudice, the court must consider the nature, relevance, and possible remoteness of the uncharged offense, the degree of certainty that it was committed, the likelihood of confusing or misleading the jurors, its similarity to the charged offense, its likely prejudicial impact on the jurors, and other factors. (<u>Falsetta</u>, supra, 21 Cal.4th at pp. 916-917; <u>People v. Harris</u> (1998) 60 Cal.App.4th 727, 737-740 (<u>Harris</u>).) We review a trial court's decision under the abuse of discretion standard, and will uphold the ruling unless the court acted in an arbitrary, capricious, or patently absurd manner. (<u>People v. Rodriguez</u> (1999) 20 Cal.4th 1, 9-10.)

Thus, on one side of the balance is the probative value of the evidence, which is increased by the relative similarity between the prior offenses and the charged offenses. (<u>Falsetta</u>, supra, 21 Cal.4th at p. 917.) In this case, the victim of the prior offenses was the same victim as the charged offenses, and the conduct involved was similar to the conduct alleged in the instant case. The prior offenses were thus highly probative of appellant's propensity to commit sexual offenses under similar circumstances.

On the other side of the balance are the inflammatory nature of the evidence, the probability of confusion, the remoteness of the offenses, and the consumption of time. (<u>Harris</u>, supra, 60 Cal.App.4th at pp. 737-741.) Here, the prior offenses were not too remote and the presentation of the evidence did not consume an undue amount of time. Appellant contends the evidence was "exceedingly prejudicial" because it "painted [him] as an incorrigible repeat sex offender/child molester." However, the prior offenses were no more inflammatory than the conduct alleged in the instant case. That the evidence tended to show appellant was a repeat perpetrator of similar sex offenses against his young cousin was precisely what made the evidence so probative and, thus, weighed in favor of its admission as propensity evidence under Evidence Code sections 1108 and 352.

Appellant also suggests that because he was not convicted of the prior offenses against Jane Doe, the jurors were tempted to convict him of the current offenses to punish him for the prior offenses. Where "uncharged acts [do] not result in criminal convictions," a jury "might [be] inclined to punish defendant for the uncharged offenses, regardless whether it considered him guilty of the charged offenses," thus "increas[ing] the likelihood of 'confusing the issues' (Evid. Code, § 352) ...." (People v. Ewoldt (1994) 7 Cal.4th 380, 405; Falsetta, supra, 21 Cal.4th at p. 917.) But the record provides no reason to conclude the jury did so here. The court properly instructed with CALCRIM No. 1191 on the limited purpose for which the jury could consider the evidence, and we presume the jurors followed the instructions (People v. Pinholster (1992) 1 Cal.4th 865, 919, overruled on another point in People v. Williams (2010) 49 Cal.4th 405, 459.)

Finally, appellant suggests that, but for the evidence of his prior offenses, it is likely the jury would not have convicted him on count 2. Appellant attacks the victim's credibility and asserts the jury's lengthy deliberations and ultimate verdict demonstrate "the jury rejected much of Jane Doe's testimony." Appellant concludes:

"But for the inflammatory testimony regarding the prior sexual conduct, the jury likely would have rejected all of her testimony. The prior offense evidence very well could have been the deciding factor in convincing the jury to find appellant guilty—and not necessarily because it believed appellant was guilty beyond a reasonable doubt."

We could not disagree more. After a careful review of the entire record, we conclude the evidence against appellant on count 2 was compelling. We are convinced that any reasonable jury would have convicted appellant on the charge of committing a lewd and lascivious act upon Jane Doe, a child under the age of 14 (Pen. Code, § 288, subd. (a)), even without evidence of the prior offenses.[FN1] Here, evidence of appellant's prior offenses, in addition to evidence of any inconsistencies in Jane Doe's stories, was properly before the jurors for their credibility assessment.

FN1: It also bears repeating that the jury did not acquit appellant of count 1 (rape) and count 3 (forcible lewd and lascivious act) but was unable to reach a verdict as to those counts. The inability to reach a verdict does not necessarily demonstrate that "the jury did not believe that appellant had raped Jane Doe or that he committed any forcible offense" as appellant asserts.

We conclude the trial court did not abuse its discretion under Evidence Code section 352 when it admitted evidence of appellant's prior offenses.

People v. Gutierrez, 2012 Cal. App. Unpub. LEXIS 5144, 9-17 (July 11, 2012).

        3.    Analysis

As Respondent correctly argues, the United States Supreme Court has expressly left open the question of whether the admission of propensity evidence violates due

process. See Estelle v. McGuire, 502 U.S. at 75, n.5; Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir. 2001). In Estelle, the Supreme Court expressly refused to determine whether the introduction of prior crimes evidence to show propensity to commit a crime would violate the Due Process Clause. Id. ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."); see also Alberni v. McDaniel, 458 F.3d 860, 866 (9th Cir. 2006) ("Estelle expressly left this issue an 'open question'"). Because the Supreme Court has specifically declined to address whether the introduction of propensity evidence violates due process, Petitioner lacks the clearly established federal law necessary to support his claims. Id.; see also Mejia v. Garcia, 534 F.3d 1036, 1046-47 (9th Cir. 2008) (relying on Estelle and Alberni and concluding that the introduction of propensity evidence under California Evidence Code § 1108 does not provide a basis for federal habeas relief, even where the propensity evidence relates to an uncharged crime); Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (The Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ.").

Accordingly, the state courts' rejection of Petitioner's claim could not have been "contrary to, or an unreasonable application of, clearly established" United States Supreme Court authority, since no such "clearly established" Supreme Court authority exists. 28 U.S.C. § 2254(d)(1).

Nevertheless, there can be habeas relief for the admission of prejudicial evidence if the admission was fundamentally unfair and resulted in a denial of due process. Estelle, 502 U.S. at 72; Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995); Jeffries v. Blodgett, 5 F.3d 1180, 1192 (9th Cir. 1993); Gordon v. Duran, 895 F.2d 610, 613 (9th Cir.1990). Constitutional due process is violated if there are no permissible inferences that may be drawn from the challenged evidence. Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991). "Evidence introduced by the prosecution will often raise

1   more than one inference, some permissible, some not." <u>Id.</u> at 920. "A habeas petitioner

2   bears a heavy burden in showing a due process violation based on an evidentiary

3   decision." <u>Boyde v. Brown</u>, 404 F.3d 1159, 1172 (9th Cir. 2005).

4          Here, the California Court of Appeal appropriately found that the evidence was

5   properly admitted to show Petitioner's propensity towards sexual assault of the same

6   victim based on the prior offense. Both the Ninth Circuit and the California Supreme

7   Court have found that California Evidence Rule 1108 ("Rule 1108") survives due process

8   challenges because of California Evidence Rule 352 ("Rule 352"), which the Court of

9   Appeal appropriately applied in this case. <u>See</u> <u>People v. Falsetta</u>, 21 Cal. 4th 903, 917,

10  89 Cal. Rptr. 2d 847, 986 P.2d 182 (Cal. 1999) ("[T]he trial court's discretion to exclude

11  propensity evidence under section 352 saves section 1108 from defendant's due

12  process challenge.").

13         The Court of Appeal sufficiently protected Petitioner's due process rights by

14  finding that the Superior Court had not abused its discretion in applying Rule 352 to

15  admit the propensity evidence under Rule 1108. The Court of Appeal found the evidence

16  to have a high probative value, which outweighed the danger of prejudice. <u>People v.</u>

17  <u>Gutierrez</u>, 2012 Cal. App. Unpub. LEXIS 5144, 9-17 (July 11, 2012). (applying Cal. Evid.

18  Code § 352). The Court of Appeal found the prior offense probative because the prior

19  act was similar conduct against the same victim. <u>Id.</u> Further, the Court did not find the

20  evidence overly prejudicial because the conduct was "no more inflammatory than the

21  conduct alleged in the instant case." <u>Id.</u>

22         This Court must defer to the Court of Appeal's conclusions with regard to

23  California Law, <u>Bains v. Cambra</u>, 204 F.3d 964, 972 (9th Cir. 2000) (citing <u>Wainwright v.</u>

24  <u>Goode</u>, 464 U.S. 78, 84 (1983)). The Court finds that this analysis adequately addressed

25  the permissible inferences created by the evidence and the fundamental fairness of its

26  introduction. The California Court of Appeal decision denying this claim was not contrary

27  to clearly established Supreme Court precedent. Accordingly, Petitioner is not entitled to

28  habeas relief with regard to claim two.

### C.    Claim Three: Police Misconduct and Coerced Confession

Petitioner, in his last claim, contends that his due process rights were violated when the prosecution obtained statements against Petitioner's interest by way of coercion, including the promise of immediate release. Petitioner alleges as part of the claim that the police edited the audio tape of the interview so that the coercive statements were removed. (Pet. at 5.)

#### 1.    State Court Decision

Petitioner presented his claim by way of a petition of writ of habeas corpus filed with the California Supreme Court. (Lodged Doc. 19.) The court denied the petition without comment. (Lodged Doc. 20.) The state court decision did not address the merits of the petition. Therefore, this Court, under § 2254(d), must determine what arguments or theories could have supported the state court's decision and determine whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with Supreme Court law. Richter, 131 S. Ct. at 786.

#### 2.    Analysis

Respondent notes that based on the cases cited by the California Supreme Court, the claim is procedurally defaulted. For the sake of judicial efficiency, rather than address issues of procedural default, the Court shall address the merits of Petitioner's claim.

#### i.    Coerced Confession

Petitioner contends that his statements to the police were coerced and made in response to false promises of immediate release. In Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966) (Miranda), the United States Supreme Court held that "[t]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444. To this end, custodial interrogation must be preceded by advice to the potential defendant that he or she has the right to consult with a lawyer, the right to

1  remain silent and that anything stated can be used in evidence against him or her. Id. at

2  473-74. Once Miranda warnings have been given, if a suspect makes a clear and

3  unambiguous statement invoking his constitutional rights, "all questioning must cease."

4  Smith v. Illinois, 469 U.S. 91, 98, 105 S. Ct. 490, 83 L. Ed. 2d 488 (1984).

5      Here, Petitioner has not alleged that his Miranda rights were violated. Petitioner

6  was read his Miranda rights, and affirmatively answered that he would speak with law

7  enforcement. Petitioner has not shown that the statements were inadmissible in violation

8  of Miranda.

9      "A confession must be suppressed, even absent a Miranda violation, if the totality

10  of the circumstances demonstrates that the confession was involuntary." DeWeaver v.

11  Runnels, 556 F.3d 995, 1002-03 (9th Cir. 2009). However, the Ninth Circuit has

12  observed that a defendant's statement was "likely voluntary" if obtained after Miranda

13  warnings and a valid waiver. Id. at 1003; see also Missouri v. Seibert, 542 U.S. 600, 608-

14  09, 124 S. Ct. 2601, 159 L. Ed. 2d 643 (2004) ("[G]iving the warnings and getting a

15  waiver has generally produced a virtual ticket of admissibility."). In determining whether a

16  statement or confession was involuntary and obtained in violation of the principles of due

17  process of law protected by the Fifth and Fourteenth Amendments, a court examines

18  whether a defendant's will was overborne by the circumstances surrounding the giving of

19  the statement or confession. Dickerson v. United States, 530 U.S. 428, 434, 120 S. Ct.

20  2326, 147 L. Ed. 2d 405 (2000); see also Doody v. Ryan, 649 F.3d 986, 1014 (9th Cir.

21  2011) (en banc) (applying Dickerson). A court considers the totality of all the surrounding

22  circumstances, including the characteristics of the accused and the details of the

23  interrogation. Dickerson, 530 U.S. at 434.

24      Petitioner asserts that the statements were coerced based on unfounded

25  promises that he would be immediately released. (Pet. at 5, Traverse at 11-12.) Although

26  Petitioner alleges that coercive comments were made by law enforcement, he has not

27  provided any evidence to support the claim. See James v. Borg, 24 F.3d 20, 26 (9th Cir.

28  1994); see also Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) ("[c]onclusory

1  allegations which are not supported by a statement of specific facts do not warrant

2  habeas relief"); Blackledge v. Allison, 431 U.S. 63, 75 n.7, 97 S. Ct. 1621, 52 L. Ed. 2d

3  136 (1977) (summary disposition of habeas petition appropriate where allegations are

4  vague or conclusory; "the petition is expected to state facts that point to a real possibility

5  of constitutional error") (citation and internal quotations omitted).

6      In addition to not providing sufficient factual support for his claim, even if the law

7  enforcement officers made unfounded promises of his release, he would not be entitled

8  to relief. Both the Supreme Court and the Ninth Circuit have held that deceptive

9  statements are well within the range of permissible interrogation tactics necessary to

10  secure a lawful confession by the police. Ortiz v. Uribe, 671 F.3d 863, 871 (9th Cir.

11  2011); see also Frazier v. Cupp, 394 U.S. 731, 739, 89 S. Ct. 1420, 22 L. Ed. 2d 684

12  (1969) (holding that a police officer's lie to defendant about his cousin confessing to the

13  commission of a murder was "insufficient in [the Supreme Court's] view to make [an]

14  otherwise voluntary confession inadmissible").

15      The Court concludes that Petitioner has not shown entitlement to relief with

16  regard to his confession being coerced. Petitioner was advised of his rights and

17  acknowledged that he understood them, and Petitioner was a mature individual who

18  never invoked his rights and instead chose to speak without counsel despite having

19  been informed he could remain silent or have a free attorney before or during

20  questioning. Given the absence of overly coercive police activity, a finding that

21  Petitioner's statement was "voluntary" within the meaning of the Due Process Clause of

22  the Fourteenth Amendment was not contrary to, or an unreasonable application of,

23  clearly established federal law. The California Supreme Court decision denying this

24  claim was not contrary to clearly established Supreme Court precedent. Accordingly,

25  Petitioner is not entitled to habeas relief with regard to his claim of coerced admissions.

26              ii.      Prosecutorial Misconduct

27      Petitioner also alleges that the tape and transcript of his statements to law

28  enforcement were edited to remove evidence of the coercive statements, including

1    promises that he would be going home, made by law enforcement. (Traverse at 11-12.)

2        A criminal defendant's due process rights are violated when a prosecutor's

3    misconduct renders a trial fundamentally unfair. <u>Parker v. Matthews</u>, ___U.S. ___, 132

4    S.Ct. 2148, 2153, 183 L. Ed. 2d 32 (2012) (per curiam); <u>Darden v. Wainwright</u>, 477 U.S.

5    168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986). Claims of prosecutorial misconduct

6    are reviewed "'on the merits, examining the entire proceedings to determine whether the

7    prosecutor's [actions] so infected the trial with unfairness as to make the resulting

8    conviction a denial of due process.'" <u>Johnson v. Sublett</u>, 63 F.3d 926, 929 (9th Cir. 1995)

9    (citation omitted); <u>see also</u> <u>Greer v. Miller</u>, 483 U.S. 756, 765, 107 S. Ct. 3102, 97 L. Ed.

10   2d 618 (1987); <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed.

11   2d 431 (1974); <u>Towery v. Schriro</u>, 641 F.3d 300, 306 (9th Cir. 2010). Relief on such

12   claims is limited to cases in which the petitioner can establish that prosecutorial

13   misconduct resulted in actual prejudice. <u>Darden</u>, 477 U.S. at 181-83. <u>See also</u> <u>Towery</u>,

14   641 F.3d at 307 ("When a state court has found a constitutional error to be harmless

15   beyond a reasonable doubt, a federal court may not grant habeas relief unless the state

16   court's determination is objectively unreasonable"). Prosecutorial misconduct violates

17   due process when it has a substantial and injurious effect or influence in determining the

18   jury's verdict. <u>See</u> <u>Ortiz-Sandoval v. Gomez</u>, 81 F.3d 891, 899 (9th Cir. 1996).

19       Upon reviewing the record, it shows that at the preliminary hearing, the prosecutor

20   and defense counsel agreed to redact the recording and interview of Petitioner by law

21   enforcement, in an effort to remove prejudicial and superfluous statements from the

22   record. (Rep. Tr. at 40-56.) For instance, there was agreement that Petitioner's

23   statements about being in a gang and his prior time in custody should not be presented

24   to the jury. (<u>Id.</u> at 42.) To the extent edits were made to the transcripts provided to the

25   jury they were made upon the mutual agreement of the parties. Petitioner has not shown

26   that the prosecution engaged in misconduct with regard to the transcripts, or that any

27   decisions in editing the transcripts were made without the consent of Petitioner's trial

28   counsel. Petitioner has failed to how the prosecution engaged in misconduct.

Petitioner also has not shown that that any misconduct on behalf of the prosecution, if it occurred, was prejudicial. <u>Darden</u>, 477 U.S. at 181-83. To the extent that Petitioner alleges that the parties redacted a conversation regarding whether he would be charged with rape or statutory rape (even though Petitioner was not eligible, based on the facts of the crime, to be charged with the lesser crime of statutory rape), the redaction was harmless as Petitioner's counsel was able to question Petitioner regarding the conversation during trial. (Rep. Tr. at 941-42.) Petitioner alleged that the officer attempted to coerce him to confess to having consensual intercourse that would result in a charge of statutory rape, and Petitioner stated that he did not know what to do and was scared. (<u>Id.</u>) Furthermore, to the extent that Petitioner alleges that his statements were taken out of context and only made in light of coercive statements made by law enforcement, Petitioner has also not shown prejudice. Petitioner made incriminating statements in phone conversations with the victim prior to providing statements to law enforcement. (Clerk's Tr. at 1-14.) As Petitioner's incriminating statements from the phone conversations were not made based on coercive statements of the law enforcement officers, Petitioner cannot show that the additional statements made during interrogation were prejudicial. Petitioner has not shown that the decision of the California Supreme Court in denying this claim was contrary to clearly established Supreme Court precedent. Accordingly, Petitioner is not entitled to habeas relief with regard to claim three.

## IV.    RECOMMENDATION

Accordingly, it is hereby recommended that the petition for a writ of habeas corpus be DENIED with prejudice.

This Findings and Recommendation is submitted to the assigned District Judge, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty (30) days after being served with the Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Any reply

to the objections shall be served and filed within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time  may waive the right to appeal the District Court's order. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   <u>May 27, 2015</u>                    <u>     /s/ Michael J. Seng</u>

UNITED STATES MAGISTRATE JUDGE